UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANGEL RIVERA,                                :
    Plaintiff,                         :
                                      :
    v.                                :     Case No. 3:21cv316(KAD)
                                      :
WARDEN SCOTT ERFE, ET AL.,                   :
    Defendants.                        :

## INITIAL REVIEW ORDER

Plaintiff, Angel Rivera ("Rivera"), filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983 and 1988 against Warden Scott Erfe, Lieutenant Mucha and Correctional Officers Bryant and Adams arising out of events occurring during Rivera's previous incarceration at Cheshire Correctional Institution ("Cheshire"). Specifically, Rivera asserts that a strip search and the use of restraints in connection therewith on January 28, 2018 violated his Constitutional rights. For the reasons set forth below, the complaint is dismissed in part.

**Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss an action if "at any time" it "determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* The court is obligated to "construe" *pro se* complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when a plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A

complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of

a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet

the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

**Factual Allegations**

As an initial matter, the court notes that Connecticut Superior Court documents dated in

August and November 2016 and signed by Inmate Juan Maldonado at MacDougall-Walker

Correctional Institution in Suffield, Connecticut, were filed with the complaint and have been

docketed as exhibits.  *See* ECF No. 1-1.  It is readily apparent that these documents have no

relevance to the claims asserted in the complaint and the court does not consider them in

assessing the allegations in the complaint.

On January 28, 2018, prior to Rivera's placement in a cell in the segregation unit at

Cheshire, Lieutenant Mucha ordered Rivera to remove his clothes pursuant to strip search

protocol.  *Id.* at 6.  Rivera undressed but did not hand his underwear to Lieutenant Mucha per

Lieutenant Mucha's instruction.  Instead, Rivera pulled his underwear down but not completely

off and "handed the underwear by foot" to Lieutenant Mucha.  *Id.*  Lieutenant Mucha

"mandated" that Rivera completely remove his underwear and that Rivera give it to him by hand.

*Id.* at 7.  Rivera complied with the mandate.  *Id.*  Lieutenant Mucha then ordered Correctional

Officers Bryant and Adams to place Rivera in the types of restraints used during transport to

2

court. Bryant and Adams placed Rivera in handcuffs and a black box without permitting Rivera to put his clothes back on. *Id.* Officers Bryant and Adams applied the handcuffs and black box as Rivera stood with his hands in front of his genitals. *Id.* In applying the handcuffs and black box, Officers Adams and Bryant came into contact with Rivera's genitals "an excessive amount of time." *Id.* Rivera was humiliated.

At the time of this incident, Rivera suffered from anxiety and post-traumatic stress disorder. *Id.* at 7. The incident caused Rivera to experience nightmares and exacerbated his pre-existing mental health conditions. *Id.* at 8-9.

### Discussion

Rivera asserts Fourth, Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983. Rivera also invokes this court's jurisdiction under 42 U.S.C. § 1988. For relief, Rivera seeks compensatory and punitive damages and an apology from the defendants.

### Section 1983 - Eleventh Amendment

Rivera does not indicate whether he sues the defendants in their individual capacities only or in both their individual and official capacities. To the extent that he seeks damages from the defendants in their official capacities, those claims for relief are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claims seeking monetary damages from the defendants in their official capacities for violations of Rivera's federal constitutional rights are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

In addition to monetary damages, Rivera seeks an order directing the defendants to apologize to him for violating his rights.  The court construes this request as a request for injunctive relief.

As an initial matter, it is not clear that the court has the authority to compel a defendant to apologize.  *See, e.g.*, *Miller v. Town of Morrisville*, No. 5:15-CV-00184, 2015 WL 4994175, at *2 (D. Vt. Aug. 20, 2015) ("At the outset, the court notes that it has no authority to order defendants to  apologize or admit that racism and discrimination are real."); *Kitchen v. Essex County Correctional Facility*, No. 12-2199 (JLL), 2012 WL 1994505, at *4 (D.N.J. May 31, 2012) (holding that "[t]he remedy of 'apology' ... is not cognizable, either within the meaning of a § 1983 action or as a general legal remedy that a court has the power to order, under any provision"); *Norris v. Poole*, No. 8:10-750-JFA-BHH, 2010 WL 1903970, at *3 (D. S.C. Apr. 19, 2010) ("The injunctive relief of compelling a government official to issue a published apology is ... in the form of mandamus relief," which is "is only available in extraordinary circumstances[.]"); *Howard v. Hunter*, No. CV 04-1434-ODW (PJW), 2008 WL 4601028, at *6 n.3 (C.D. Cal. Oct. 10, 2008) ("As to Plaintiff's request that the Court order Defendants to apologize, the Court is not aware of any authority that allows it to do so. Thus, this claim, too, is dismissed at this stage.").

Even if the court could issue an order directing the defendants to apologize to Rivera, the Eleventh Amendment precludes requests for declaratory or injunctive relief for prior violations of federal law.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985)

4

("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief")

(citations omitted).  A request that the court order the defendants to apologize for past

unconstitutional conduct does not constitute a request for prospective injunctive relief.  *See, e.g.*,

*Bhatia v. Connecticut Dep't of Children & Families (DCF)*, 317 F. App'x 51, 52 (2d Cir. 2009)

(summary order) ("Even construing the complaint liberally to identify individual officers as

defendants, we would still conclude that the defendants were immune because the complaint

does not seek "an injunction that governs the official's future conduct. . . . Rather, it asks for

damages and an injunction requiring the defendant to supply the plaintiff with a

written apology.") (citation an internal quotation marks omitted).  Accordingly, the request for

injunctive relief in the form of an order compelling the defendants to apologize for violating

Rivera's constitutional rights in the past is dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**Section 1983 – Fourth, Eighth, Fourteenth Amendments - Warden Erfe**

Rivera describes Scott Erfe as having been both the Warden and District Administrator at

Cheshire on January 28, 2018.  Compl. at 1, 5.  He states that Erfe had a "duty and obligation

and had authority under color of law failing in the aforementioned which is under the scope and

color of state law."  *Id.* at 2.

To state a claim under section 1983, a plaintiff must allege facts showing that the

defendant, a person acting under color of state, law deprived him of a federally protected right.

*See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).  Furthermore, a government or

prison official is not personally involved in a constitutional violation simply because he or she

was the supervisor of other defendants who may have violated the plaintiff's constitutional

rights.  *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("Liability for supervisory

government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant") (citation omitted).

In *Tangreti v. Bachmann*, No. 19-3712, 2020 WL 7687688 (2d Cir. Dec. 28, 2020), the Second Circuit considered the impact of the Supreme Court's decision in *Iqbal* on the standard to be applied to determine supervisory liability. *Id.* at *4-6. The court concluded that a "after *Iqbal*, there is no special rule for supervisory liability." *Id.* at *6. Thus, "[t]he violation must be established against the supervisory official directly." *Id.* The Second Circuit held that to demonstrate personal involvement under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

Other than the caption of the complaint and description of the parties, Rivera does not otherwise mention Erfe. There are no facts to suggest that Erfe, either as the warden or the district administrator at Cheshire, was aware of or directly involved in Rivera's strip search or his placement in restraints after the strip search on January 28, 2018. Accordingly, Rivera has failed to plausibly allege that defendant Erfe violated his Fourth, Eighth or Fourteenth Amendment rights. All claims asserted against Warden/District Administrator Erfe are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### Section 1983 - Fourth Amendment – Remaining Defendants

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Harris v. Miller*, 818 F.3d 49, 62 (2d Cir. 2016), the Second Circuit "reiterate[d] that inmates retain a limited right of bodily privacy under the Fourth Amendment."

Evaluating a claim that prison officials or officers infringed on an inmate's "right to bodily privacy" requires "a two-part inquiry: (1) First, the court must determine whether the inmate has "'exhibit[ed] an actual, subjective expectation of bodily privacy'"; and (2) second, the court must determine "'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights.'" *Id.* (quoting *Covino v. Patrissi,* 967 F.2d 73, 77-78 (2d Cir.1992).

Rivera does not challenge the strip search itself.  Rather, he challenges Lieutenant Mucha's order directing Officers Adams and Bryant to place him in transport restraints after the search without permitting him to put his clothes back on first.  Applying restraints to a naked inmate may be construed as a serious invasion of privacy.  Thus, for purposes of this ruling only, the court will assume that Rivera had a subjective expectation of bodily privacy at the time of the strip search.  The court cannot discern a legitimate justification for placing Rivera in transport restraints without permitting him to put on his clothes or for excessively touching his genitals in the process. This Fourth Amendment privacy claim will proceed against Lieutenant Mucha and Correctional Officers Bryant and Adams in their individual capacities.

**Section 1983 - Eighth Amendment – Remaining Defendants**

Rivera alleges that in applying the handcuffs and the black box to his wrists, Officers Adams and Bryant repeatedly touched his genitals.  He characterizes this repeated and

unnecessary touching as a sexual assault.

Although a sentenced inmate may experience conditions that are "restrictive or even harsh," the Eighth Amendment prohibits the imposition of conditions that "involve the wanton and unnecessary infliction of pain" or violate "contemporary standard[s] of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted). In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit acknowledged that "[s]exual abuse" of inmate by a correctional officer "may violate contemporary standards of decency and can cause severe physical and psychological harm." *Id.* at 861. In *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified the Eighth Amendment standard that must be applied to a claim of sexual abuse of an inmate by a prison official and held that in view of the changing standards of human decency, an inmate may state a claim for deliberate indifference if "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area ... serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]" *Id.* at 257. Thus, one isolated incident of sexual abuse that was "sufficiently severe or serious" could constitute conduct that was sufficiently harmful enough to offend contemporary standards of decency. *Id.* The "principal inquiry" a court must make "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58.

Rivera states that Lieutenant Mucha ordered Officers Adams and Bryant to place him in restraints as he stood naked with his hands in front of his genitals. Rivera alleges that Officers Adams and Bryant touched his genitals repeatedly during the application of restraints. The court

is unable to discern from these facts whether the touching of Rivera's genitals by Officers Adams and Bryant was intentional or incidental to a legitimate penological duty.  Rivera suggests that Lieutenant Mucha issued the order that he be handcuffed in this manner for the purpose of humiliating him rather than for the purpose of maintaining safety or security and that the handcuffing incident caused him to experience nightmares, mental anguish, fear in the presence of other individuals and exacerbated his pre-existing anxiety and post-traumatic stress disorder conditions.  *Id.* at 7-9.  The court will permit the Eighth Amendment sexual abuse claim to proceed against Lieutenant Mucha and Correctional Officers Bryant and Adams in their individual capacities for further development of the record.  *See, e.g.*, *Edwards v. Haines*, No. 16-CV-317-JDP, 2017 WL 5312212, at *3 (W.D. Wis. Nov. 13, 2017) (concluding facts raised inference that officer had violated the Eighth Amendment by "conduct[ing] an unnecessary strip search, forc[ing] Edwards to remain naked [even after completing the strip search], and ma[king] harassing comments, all for the purpose of humiliating Edwards rather than for a legitimate prison purpose").

### Section 1983 - Fourteenth Amendment – Remaining Defendants

Rivera alleges that Lieutenant Mucha and Correctional Officers Bryant and Adams intentionally deprived him of his right to "equal protection of law."  Compl. at 6.  The Equal Protection Clause of the Fourteenth Amendment provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

9

To state an equal protection claim, Rivera must allege facts showing: (1) he was treated differently from similarly situated individuals and (2) the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Rivera asserts no facts to suggest that the defendants discriminated against him based on his membership in a protected class.  Nor does he allege that Lieutenant Mucha and Correctional Officers Bryant and Adams treated other similarly situated inmates who may not have followed the same strip search orders differently than they treated him.

Alternatively, an equal protection claim may be stated on the theory that a plaintiff has been irrationally singled out as a "class of one."  *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008).  To state a claim under the class of one theory, Rivera "must show 'an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] himself.'"  *Ruston v. Town Bd. for Town of Shaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).  Because Rivera has not identified any inmates who were treated differently under the same or sufficiently similar circumstances, he has failed to state a plausible "class of one" equal protection claim.  *See, e.g.*, *Nielson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (The plaintiff's circumstances and the other person's circumstances must be "prima facie identical.") (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Webb v. Arnone*, No. 3:17-cv-1624(SRU), 2018 WL 3651333, at *5 (D. Conn. Aug. 1,

2018) (concluding plaintiff "ha[d] not met the requirements necessary to state a plausible class-of-one equal protection claim" because he failed to assert any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy").  Accordingly, the allegation that Lieutenant Mucha and Correctional Officers Bryant and Adams deprived Rivera of the equal protection of the laws under the Fourteenth Amendment is dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### Section 1988

Rivera also relies on 42 U.S.C. § 1988 as a basis for his constitutional claims.  Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with federal law where appropriate, or with state law.  42 U.S.C. § 1988(a).  This section does not provide for an independent cause of action or source of jurisdiction.  *See Moor v. Alameda County,* 411 U.S. 693, 702-06 ("[Section 1988] was obviously intended to do nothing more than to explain the source of law to be applied in actions brought to enforce the substantive provisions of the [the 1966 Civil Rights Act]."), *reh'g denied,* 412 U.S. 963 (1973).  Section 1988(b) permits a district court, "in its discretion, [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of bringing a lawsuit under Section 1983 or various other civil rights provisions.  42 U.S.C. § 1988(b).  A *pro se* litigant, however, is not entitled to attorneys' fees under section 1988.  *See Kay v. Ehrler,* 499 U.S. 432, 435 (1991).  Any claims asserted by Rivera under 42 U.S.C. § 1988 are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1)      The claims seeking punitive and compensatory damages from the defendants in their official capacities for violations of Rivera's federal constitutional rights are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).  The claim seeking injunctive relief from the defendants in their official capacities, all claims asserted against Warden/District Administrator Erfe in his individual capacity, the Fourteenth Amendment equal protection claim asserted against Lieutenant Mucha and Correctional Officers Bryant and Adams in their individual capacities and the claims asserted under 42 U.S.C. § 1988 are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Fourth Amendment privacy claim and Eighth Amendment sexual assault claim will proceed against Lieutenant Mucha and Correctional Officers Bryant and Adams in their individual capacities.[1]

(2)      on or before **May 14, 2021**, the Clerk shall verify the current work addresses of: Lieutenant Mucha, Correctional Officer Bryant and Correctional Officer Adams with the Department of Correction Office of Legal Affairs and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his individual capacity at the address provided by the Department of Correction Office of Legal Affairs.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the requests.  If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

---

[1]  The court notes that the Fourth and Eighth Amendment claims asserted against Lieutenant Mucha and Correctional Officers Bryant and Adams may be barred by the three-year statute of limitations applicable to section 1983 actions.  *See Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir. 1994) (applying Conn. Gen. Stat. § 52–577 three-year personal injury statute of limitations to § 1983 actions).  Although Rivera signed the complaint on January 26, 2021, he did not file the complaint until March 10, 2021.  The Court declines to address this affirmative defense *sua sponte*.

(3)     Defendants Mucha, Bryant and Adams shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 23, 2021**.  Discovery requests SHALL NOT be filed with the court.

(5)     All motions for summary judgment shall be filed BY **November 23, 20121.**

(6)     The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(7)      According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Rivera changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case.  Rivera must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  He should also notify the defendants or defense counsel of his new address.

SO ORDERED at Bridgeport, Connecticut this 23rd day of April 2021.

___/s/_____
Kari A. Dooley
United States District Judge

13