UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL RIVERA,<br>    *Plaintiff*, | )   3:21-CV-316 (SVN)<br>)<br>) |
| v. | )<br>) |
| MUCHA, BRYANT, ADAMS,<br>    *Defendants*. | )<br>)   April 22, 2022 |

**RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTIONS TO APPOINT COUNSEL**

Sarala V. Nagala, United States District Judge.

Plaintiff Angel Rivera has brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by Defendants Lieutenant Mucha, Correction Officer Bryant, and Correction Officer Adams, who are all employed by the Connecticut Department of Correction ("DOC"). In addition, Plaintiff has filed two motions requesting an appointment of *pro bono* counsel. Defendants have moved to dismiss the complaint, contending that it is barred by the applicable statute of limitations. For the reasons described below, the Court denies Defendants' motion to dismiss without prejudice to allow further development of the factual record on the issues of equitable tolling and administrative exhaustion. The Court grants Plaintiff's request for an appointment of *pro bono* counsel for the purpose of this further factual development.

**I.    FACTUAL BACKGROUND**

Plaintiff's complaint, ECF No. 1, and the Court's Initial Review Order, ECF No. 11, set forth Plaintiff's allegations, which the Court accepts as true for the purpose of resolving the present motion to dismiss, in detail. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In summary, during the relevant time period, Plaintiff was incarcerated at Cheshire Correctional Institution ("Cheshire"). ECF No. 11 at 1. On January 28, 2018, Mucha ordered Rivera to remove

his clothes pursuant to strip search protocol. *Id.* at 2. Mucha then ordered Bryant and Adams to place Plaintiff in handcuffs and a black box, the type of restraints used when transporting an inmate to court. *Id.* Bryant and Adams restrained Plaintiff as instructed without first permitting him to put his clothes on. *Id.* at 2–3. While applying the restraints, Bryant and Adams came into contact with Plaintiff's genitals "for a[n] excessive amount of time." ECF No. 1 at 7. Plaintiff, who had been suffering from anxiety and post-traumatic stress order before this incident, thereafter experienced nightmares and exacerbated symptoms of his mental illnesses. *Id.* at 7–8.

The fourth page of Plaintiff's complaint, containing a handwritten caption, lists the date as January 25, 2021. *Id.* at 4. On the final page of Plaintiff's complaint, he signed under penalty of perjury that he had read the complaint and that the information contained therein was true and correct, and his signature is dated January 26, 2021. *Id.* at 11. Plaintiff's complaint was filed on March 10, 2021. *Id.* at 1. At the time of filing his complaint, Plaintiff had been released from custody, although he has since been reincarcerated.

Pursuant to its Initial Review Order, the Court construed Plaintiff's complaint as raising two claims pursuant to 42 U.S.C. § 1983: first, that Mucha, Bryant, and Adams violated his Fourth Amendment right of bodily privacy by placing Plaintiff in the transport restraints without permitting him to put his clothes on; and second, that Mucha, Bryant, and Adams sexually abused him in violation of the Eighth Amendment by unnecessarily touching his genitals for an excessive period of time while applying the transport restraints. ECF No. 11 at 7–9; ECF No. 1 at 7. The Court permitted these claims to proceed and dismissed all others, including all claims against former Defendant Erfe, Cheshire's Warden. ECF No. 11 at 6, 12.

Thereafter, the remaining Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 15. They contend that the three-year limitations period

applicable to Plaintiff's claims expired on January 28, 2021, before he filed his complaint. In opposition, Plaintiff notes that he prepared his complaint before the expiration of the limitations period and essentially urges the Court to conclude, for various reasons including periods of quarantine resulting from COVID-19 and his own his diagnosis with COVID-19, that the period was equitably tolled from then until the date it was filed. *See* ECF Nos. 18, 31. He also asks the Court to appoint *pro bono* counsel to help prosecute his claims. ECF Nos. 37, 40.

## II. TIMELINESS

### A. Legal Standard

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted[.]" *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556). The Court must "accept[] as true the complaint's factual allegations and draw[] all inferences in the plaintiff's favor." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (citation omitted).

Plaintiff's claims arise from 42 U.S.C. § 1983, a federal cause of action which contains no explicit statute of limitations. "Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations. . . . The statute to be borrowed is the one that is most appropriate . . . or most analogous . . . so long as it is not inconsistent with federal law or policy." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994)

(citations and internal quotation marks omitted). Courts in this district generally subject § 1983 claims to the three-year limitations period of Connecticut General Statutes § 52-577, which pertains to general tort claims not specifically covered by different limitations provisions. *Id.* at 134.

Accordingly, Plaintiff's § 1983 claims are subject to the three-year limitations period provided by § 52-577. *See id.* (noting that § 52-577 encompasses a variety of injuries to personal interests). As noted, the incident is alleged to have occurred on January 28, 2018. ECF No. 1 at 6. Plaintiff had a complete cause of action on that date, which prompted the limitations period to begin. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (holding that, under federal law, a claim accrues when the plaintiff "has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief" (citations and quotation marks omitted)); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (noting that federal law "establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action."). Thus, the limitations period expired on January 28, 2021, three years after the date of the alleged incident. Because Plaintiff filed his complaint on March 10, 2021, approximately six weeks after the limitations period expired, his claims are untimely.

However, equitable tolling may excuse Plaintiff's untimely filing. "[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "While equitable tolling is warranted only in rare and

exceptional circumstances . . . courts do not apply its requirements mechanistically[.]" *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011) (citations and internal quotation marks omitted). "Rather, 'the exercise of a court's equity powers must be made on a case-by-case basis,' mindful 'that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010)).

Regarding the diligence required by the first element, the litigant must "show diligent pursuit of his claim throughout the period he seeks to toll. . . . If such a showing is not made, equitable tolling should be denied or at least circumscribed to the period for which diligence and causation are established." *Harper*, 648 F.3d at 139 (citations and internal quotation marks omitted); *see also Adkins v. Warden*, 585 F. Supp. 2d 286, 300 (D. Conn. 2008) (noting that "the Court examines the [habeas] petitioner's diligence not only during the time he seeks to have equitably tolled but also during the time up to and including the date of filing"). This standard does not call for "maximum feasible diligence," but rather a showing that the litigant acted "as diligently as reasonably could have been expected under the circumstances[.]" *Harper*, 648 F.3d at 138–39 (citations and internal quotation marks omitted).

The second element requires the litigant to demonstrate "extraordinary circumstances beyond his control[.]" *Id.* at 137. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Id.* The Second Circuit has held that "medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." *Id.* (citing *Bolarinwa v. Williams*, 593 F.3d 226, 231–32 (2d Cir. 2010) (holding that a mental illness may equitably toll the limitations period to file a federal habeas petition), and *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (holding that a mental illness may equitably toll the

5

limitations period to file a discrimination claim)). However, with respect to a medical condition or other extraordinary circumstance, the litigant must demonstrate that the extraordinary circumstances "*caused* him to miss the original filing deadline." *Id.* at 137 (emphasis added) (citing *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the [litigant] to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [litigant], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.")). With respect to a medical condition, this requires the litigant to "offer a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." *Bolarinwa*, 593 F.3d at 232 (citation and internal quotation marks omitted).

      B.  Discussion

The Court concludes that "the highly case-specific inquiry called for in these circumstances is most appropriately conducted" by further development of the factual record and, thus, that Defendants' motion to dismiss must be denied. *See id.* Plaintiff contends that "the reason why [he] filed on March 10, 2021 was due to Covid-19[.]" ECF No. 18 at 5. Specifically, Plaintiff represents that, while released from state custody, he contracted the COVID-19 virus, for a second time, sometime during December of 2020 or January of 2021, around when the limitations period expired. *Id.*; *see also* ECF No. 31 at 3–4 (noting that, around December of 2020, Plaintiff "was working on the complaint and got it ready to submit," but then "was diagnosed with Covid-19 and [he] was not able to submit the complaint as [he] had to quarantine[.]"). Plaintiff further represents that, sometime during February of 2021, while still feeling unwell from his COVID diagnosis, he

was placed in a housing program that had a COVID outbreak. Under the program's policy, Plaintiff asserts, he was required to quarantine again until early March of 2021.

These contentions raise an inference that, throughout the final weeks of the limitations period and extending several more weeks beyond the expiration of the period, Plaintiff faced a severe obstacle outside his control—due to a symptomatic COVID-19 illness that adversely affected his capacity to pursue his rights, or a series of enforced quarantines that prevented him from mailing or delivering his prepared complaint to the courthouse, or both. Such circumstances could fall within the category of mental and physical illnesses that warrant equitable tolling. *See Bolarinwa*, 593 F.3d at 232.

The issues of whether such circumstances in fact occurred and the extent to which they impaired Plaintiff's ability to file his complaint within the limitations period present factual questions not properly resolved on a motion to dismiss. *See Modica v. N.Y.C. Dep't of Educ.*, No. 30-CV-4834 (JMF), 2021 WL 3408587, at *3–4 (S.D.N.Y. Aug. 4, 2021) ("At a minimum, the Court cannot say as a matter of law that equitable tolling is unavailable because it turns on factual issues outside the record."); *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) ("When a plaintiff raises an equitable tolling argument in response to a motion to dismiss on statute of limitations grounds, the motion to dismiss should be denied unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled." (citations and internal quotation marks omitted)).

Accordingly, the Court will deny the motion to dismiss to permit further development of the factual record. *See Brown*, 287 F.3d at 60 (holding that, "[b]ased on the limited record presented to the district court, it appears there may be substance to" the plaintiff's claim that a medical condition impaired his ability to file within the limitations period, warranting further

development of the factual record on remand); *Bolarinwa*, 593 F.3d at 232 (instructing the district court on remand to consider the "highly case-specific" question of whether there was a causal relationship between the federal habeas petitioner's mental illness and the delay in filing her petition, given the "limited record" previously presented to the court).

Defendants rely on various cases from other federal district courts that found COVID-related issues insufficient to warrant equitable tolling of limitations periods. *See, e.g.*, *Hines v. United States*, No. 20-CV-10064 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (declining to equitably toll a limitations period, despite pandemic-related restriction on the federal habeas petitioner's access to a law library and legal assistance, because, "[w]hile the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, [a habeas] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown." (citation and internal quotation marks omitted)); *United States v. Henry*, No. 2:20-cv-1821, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) (declining to equitably toll limitations period where the federal habeas petitioner raised a "conclusory assertion" that "the pandemic brought the federal criminal justice system to a standstill," without any "explanation for how the pandemic impeded [the petitioner's] ability to pursue his rights" in federal court), *certificate of appealability denied*, 2021 WL 3669374 (3d Cir. June 3, 2021).

While perhaps instructive on the ultimate question of whether Plaintiff can demonstrate that equitable tolling is warranted, these cases do not mandate dismissal at this early stage of the case. In most of these cases, the litigants seeking equitable tolling raised no contention that they personally suffered from a debilitating COVID diagnosis during the relevant time frame or were prevented from complying with the limitations period because of a mandated quarantine. *See also,*

*e.g.*, *Rodriguez v. Hudson Valley Chrysler*, No. 20-cv-9646 (NSR), 2021 WL 5910173, at *3 (S.D.N.Y. Dec. 14, 2021) (noting that the Title VII plaintiff received his right-to-sue notice at the beginning of the pandemic and "fails to explain any specific circumstances or restrictions that prevented him from filing his complaint" within the limitations period); *Hood v. Cath. Health Sys., Inc.*, No. 1:20-cv-673, 2020 WL 8371205, at *7 (W.D.N.Y. Sept. 28, 2020) (declining to equitably toll limitations period because the plaintiff failed to present "specific evidence that the pandemic or the in-person work restrictions . . . actually prevented her from meeting the [relevant] deadline," for example, by reference to any "evidence that counsel herself became ill" or evidence that "the in-person work restrictions . . . made it impossible to complete the task of filing a complaint"). In cases in which COVID-19 was asserted generally as reason for late filing, further development of the factual record was not necessary because the litigants' conclusory allegations regarding the "generalized disruption of the pandemic" was not enough to raise a reasonable inference of an extraordinary circumstance warranting equitable tolling. *See id.*; *Brown*, 287 F.3d at 60.

Here, however, Plaintiff's contention that he was diagnosed with COVID and subject to quarantines from December of 2020 to early March of 2021, when he filed his complaint, calls for further factual development. Moreover, Plaintiff's briefing raises allegations that he suffered from other severe mental illnesses throughout the limitations period, which may also inform the question of equitable tolling following clarification and evidentiary support.[1]

Accordingly, Defendants' motion to dismiss is denied on this ground, without prejudice to reiterate the affirmative defense of untimeliness after further development of the record. As noted below, the Court will phase discovery and dispositive motions on the issues preliminary to

---

[1] Defendants also assert that, because Plaintiff filed a complaint in February of 2019 with the Connecticut Commission on Human Rights and Opportunities regarding the incident that is the subject of his federal complaint, he was capable of filing his federal suit at that time. That issue can be explored during the period of limited discovery the Court is authorizing.

9

liability—specifically, timeliness and exhaustion of administrative remedies. The Court will then set new discovery and dispositive motion deadlines pertaining to liability, if necessary.

### III. APPOINTMENT OF *PRO BONO* COUNSEL

Plaintiff also seeks appointment of *pro bono* counsel to help prosecute his claims. ECF Nos. 37, 40. Civil litigants generally do not have a constitutional right to the appointment of counsel. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68–69 (2d Cir. 2011). However, federal district courts have discretion to appoint *pro bono* counsel. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ("Broad discretion lies with the district judge in deciding whether to appoint counsel[.]" (citation omitted)); 28 U.S.C. § 1915(e)(1) (permitting district court to appoint *pro bono* counsel for indigent litigant); D. Conn. L.R. 83.10 (explaining the procedures for appointment of *pro bono* counsel in this district). The Second Circuit has cautioned against the "routine appointment of counsel[.]" *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989).

In assessing whether to appoint *pro bono* counsel, the district court must "determine whether the indigent's position seems likely to be of substance." *Id.* at 61; *see also Cooper*, 877 F.2d at 171. If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61–62.

The Court is convinced that Plaintiff's claim for equitable tolling is sufficiently meritorious to warrant appointment of *pro bono* counsel for the purpose of developing the factual record regarding the circumstances that may support a finding of equitable tolling. In particular, the date

of the complaint strongly supports an inference that Plaintiff had been diligently preparing to file his action and that, but for a COVID diagnosis and/or exposure triggering a quarantine period, he would have filed the complaint within the limitations period. As an indigent person currently incarcerated, Plaintiff has a very limited ability to obtain the medical and housing records necessary to substantiate his claim for equitable tolling. Moreover, the possible severity of any COVID diagnosis Plaintiff received during the relevant time period will likely present complex and specialized medical issues. These factors weigh even stronger in favor of appointing *pro bono* counsel when considering whether Plaintiff's mental illnesses might warrant equitable tolling.

The Court recognizes that, before an appointment of *pro bono* counsel for an indigent litigant is considered, the indigent person generally must demonstrate that he tried, but was unable, to secure counsel. *Hodge*, 802 F.2d at 61. Here, Plaintiff's motions seeking appointment of counsel, ECF Nos. 37 and 40, do not indicate whether he has attempted to secure counsel. However, Plaintiff's filings also indicate that he presently experiences severe distress associated with his history of mental illness, post-traumatic stress disorder, and addiction. Given the likely merit of Plaintiff's claim of equitable tolling, the factual investigation necessary to litigate the issue, and Plaintiff's apparent difficulties seeking out counsel and presenting the case, the Court is convinced that the "appointment of counsel would be more likely to lead to a just determination" in this case. *See id.* at 61–62.

Accordingly, the Court will appoint *pro bono* counsel for the purpose of conducting discovery and briefing pertaining to the issues preliminary to liability. *Pro bono* counsel shall participate in developing the factual record regarding the circumstances that may support a finding of equitable tolling.

In addition, in an effort to streamline the case during *pro bono* counsel's appointment, counsel for both parties shall conduct discovery as to whether Plaintiff has exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). If Defendants believe that there is a sound basis to assert that the matter should be dismissed for failure to exhaust administrative remedies, or because equitable tolling is unavailable after further factual development, Defendants may file a preliminary motion for summary judgment on either or both of those grounds by **July 22, 2022.** The filing of a preliminary motion for summary judgment on these issues will not preclude the filing of a motion for summary judgment on the merits of the case at a later date, if the case proceeds following resolution of timeliness and exhaustion issues.

*Pro bono* counsel's appointment shall continue through the resolution of any summary judgment motion brought on exhaustion and timeliness grounds, and shall include filing a response to any summary judgment motion pursued by Defendants on these issues. After resolution of the timeliness and exhaustion issues, the Court will reevaluate whether continued involvement of *pro bono* counsel is warranted.

## IV. CONCLUSION

Because Plaintiff plausibly suggests that extraordinary circumstances prevented him from timely filing his complaint despite due diligence, Defendants' motion to dismiss, ECF No. 15, is denied without prejudice. For similar reasons, Plaintiff's first motion for appointment of counsel, ECF No. 37, is granted for the purpose of conducting preliminary discovery and responding to preliminary dispositive motions as discussed herein. Plaintiff's second motion for appointment of counsel, ECF No. 40, is denied as moot.

In addition, the Court vacates the deadlines set forth in its Initial Review Order, ECF No. 11, and sets the following schedule.

- **By May 16, 2022,** Defendants shall file their answer to the complaint.

- **By May 16, 2022, or within three weeks from the date of *pro bono* counsel's appointment, whichever is later,** Plaintiff's appointed *pro bono* counsel shall file a notice confirming that he or she has met with Plaintiff and conferred with him regarding the next stage of the case.

- **By July 25, 2022,** the parties shall complete limited preliminary discovery pertaining to the issues of (1) equitable tolling and (2) exhaustion of administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

- **By August 25, 2022,** if warranted, Defendants may file a preliminary summary judgment motion regarding the affirmative defenses of untimeliness/lack of a basis for equitable tolling and exhaustion of administrative remedies, without waiving the ability to file a later summary judgment motion on other defenses.  Plaintiff's opposition and Defendants' reply shall be filed in accordance with the timeline set forth in Local Rule 7.  Following resolution of this preliminary dispositive motion, the Court will set a deadline for the liability phase of discovery and the briefing of such dispositive motions, if necessary.  The Court will also consider whether appointment of *pro bono* counsel remains warranted.

- In addition, the parties shall file two joint status reports.
    - First, **by July 5, 2022,** the parties shall file a joint status report: (1) informing the Court of the status of discovery, (2) providing a detailed explanation of discovery yet to be completed, and (3) indicating whether either party desires a referral to a U.S. Magistrate Judge for a settlement conference.

- o Second, **by August 4, 2022,** the parties shall file a joint status report: (1) confirming that discovery on the preliminary issues of timeliness and exhaustion is complete, (2) indicating whether, and on which grounds, Defendants intend to file a preliminary dispositive motion, (3) indicating whether either party desires a referral to a U.S. Magistrate Judge for a settlement conference, and (4) indicating whether Plaintiff's appointed *pro bono* counsel would be willing to continue representing him in the event that the Court denies Defendants' dispositive motions.

**SO ORDERED** at Hartford, Connecticut, this 22nd day of April, 2022.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE